```
 1                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
 2

 3    UNITED STATES OF AMERICA      )    CASE NO. 1:19CR639
                                    )
 4           vs.                    )
                                    )    Greensboro, North Carolina
 5    WALTER CLIFTON WOOD           )    January 19, 2021
      _____    2:03 p.m.
 6

 7

 8                   TRANSCRIPT OF THE SENTENCING HEARING
                  BEFORE THE HONORABLE CATHERINE C. EAGLES
 9                     UNITED STATES DISTRICT JUDGE

10

11    APPEARANCES:

12    For the Government:          ERIC L. IVERSON, AUSA
                                   Office of the U.S. Attorney
13                                 101 S. Edgeworth Street, 4th Floor
                                   Greensboro, North Carolina 27401
14

15    For the Defendant:          JOHN SCOTT COALTER, ESQ.
                                   McKinney & Justice
16                                 910 N. Elm Street
                                   Greensboro, North Carolina 27401
17

18    Court Reporter:             BRIANA L. BELL, RPR
                                   Official Court Reporter
19                                 P.O. Box 20991
                                   Winston-Salem, North Carolina 27120
20

21

22

23

24
             Proceedings recorded by mechanical stenotype reporter.
25            Transcript produced by computer-aided transcription.
```

```
 1                  P R O C E E D I N G S

 2        (The Defendant was present.)

 3             THE COURT:  Okay.  Good afternoon.

 4             MR. COALTER:  Good afternoon.

 5             MR. IVERSON:  Your Honor, Eric Iverson for the United

 6   States.  This matter is the United States verse Walter Clifton

 7   Wood, 1:19CR639.  This matter is on for sentencing.  Mr. Wood

 8   is before the Court with his attorney, Mr. Coalter.  For

 9   Probation is Ms. Patton.

10             And at the appropriate time, Your Honor, there was

11   one item I wanted to address that was in the position paper I

12   filed.

13             THE COURT:  Okay.

14             MR. IVERSON:  A correction.

15             THE COURT:  A correction.  Thank you.

16             Good afternoon, Mr. Coalter.

17             MR. COALTER:  Good afternoon, Your Honor.

18             THE COURT:  Let's see.  You've seen the presentence

19   report and reviewed it with Mr. Wood?

20             MR. COALTER:  I have, Your Honor.

21             THE COURT:  And you're ready to proceed?

22             MR. COALTER:  We are.

23             THE COURT:  And it looks like you've withdrawn his

24   objections to the presentence report?

25             MR. COALTER:  In looking at it, Mr. Wellman had
```

US v. Walter Wood  -- Sentencing  -- 1/19/21

withdrawn all but two, and I have gone back, and we've

withdrawn the remainder.

      **THE COURT:**  All right.  Thank you.

      Mr. Wood, if you would stand up.

      Good afternoon.

      **THE DEFENDANT:**  Good afternoon.

      **THE COURT:**  Have you had time to look through your

presentence report and talk to Mr. Coalter and get ready for

today?

      **THE DEFENDANT:**  Yes, Your Honor.

      **THE COURT:**  Do you have any questions before we get

started?

      **THE DEFENDANT:**  No, Your Honor.

      **THE COURT:**  You can be seated.

      So I did read everything.  There were a bunch of

sentencing memos and addendums and such, but I believe I got

everything that was on the docket.  I did read the report by

Dr. Hersh, so I have seen that as well.

      And, Mr. Iverson, your correction, does it have to do

with the guidelines or anything in the presentence report?

      **MR. IVERSON:**  It doesn't affect the guidelines.  It's

just something -- it's more of a clarification that I feel like

I should make for the record.

      **THE COURT:**  Okay.  Well, why don't you -- I am going

to adopt the presentence report, but why don't you tell me what

US v. Walter Wood -- Sentencing -- 1/19/21

1  it is first just so that's on the table.

2          MR. IVERSON:  Absolutely.

3          THE COURT:  And which memo it is, preferably by

4  docket number.

5          MR. IVERSON:  Thirty.  And it's actually referenced

6  as 30-1.  It's page 9.  So attached to the sentencing

7  memorandum as 30-1 was an example of communication between

8  Mr. Wood and a minor living in the Midwest area of the country.

9  And on page 9 of 30-1, I referenced a close-up of a female

10  individual touching her genitalia, i.e., masturbation.  I

11  referenced that in two places.  I was doing that from my notes.

12          Going back and looking, I think that's what it is,

13  but it's an extremely blurry image.  I have shown Mr. Coalter

14  this image.  So I just -- I felt it best to state that on the

15  record, that it is very blurry.  I think it is hard to tell

16  exactly what that is.  However, there are numerous files in

17  this case that do depict clearly the victim's genitalia.  It's

18  just I picked a poor example.  That's all.

19          THE COURT:  Thank you for correcting that.

20          And you have no objections to the presentence report?

21          MR. COALTER:  No, Your Honor.

22          THE COURT:  I'll adopt the presentence report as is.

23  And as to all matters in the report, I will adopt those as

24  findings of fact.

25          The total offense level is 42.  The criminal history

US v. Walter Wood  -- Sentencing  -- 1/19/21

category is V.  That makes the guideline range 240 months,
which is the statutory maximum.  The supervised release
suggestion is 5 years to life.  And the fine range is 50,000 to
$250,000.

        Did I accurately state the applicable guidelines?

        **MR. COALTER:**  Yes, Your Honor.

        **THE COURT:**  Mr. Iverson?

        **MR. IVERSON:**  Yes, Your Honor.

        **THE COURT:**  I will take that into account on an
advisory basis.  I am, of course, bound by the 20-year
statutory maximum, and I think supervised release must be at
least 5 years by statute.

        So Probation has suggested a downward variance.

        Does anybody have evidence?

        **MR. COALTER:**  No evidence, Your Honor.

        **MR. IVERSON:**  Not from the Government, Your Honor.

        **THE COURT:**  Okay.  You know, I do often vary in this
kind of case, but I usually don't have a prior record like
Mr. Wood's.  And I think the guideline without the statutory
maximum would have been 360 months to life.

        No, that's not right.  I'm looking at the wrong
place.  Let me look again.  Yes, it is right.  I was still
looking at the wrong place, but now I'm looking at the right
place.  Paragraph 103, guideline range of 360 to life except
for the statutory maximum.

        US v. Walter Wood  -- Sentencing  -- 1/19/21

1    I will say his criminal history category appears to

2 be somewhat overstated.  He appears to be unable to comply with

3 the laws about having tags and a driver's license, and that

4 appears to be responsible for a huge amount of his points.  So

5 those are some of the things that I noticed.

6    He has a pending charge.  Has that been resolved?

7    **THE PROBATION OFFICER:**  No, Your Honor, it has not.

8    **THE COURT:**  That's paragraph -- let's see.  Criminal

9 history, paragraph 75.  Okay.

10    Go ahead then, Mr. Coalter.

11    **MR. COALTER:**  Yes, Your Honor.  Just since you've

12 mentioned criminal history, and I will get into it more in a

13 little bit, I believe his last driving conviction was in

14 roughly 2009.  So at some point he -- the message got through

15 to him with regard to driving.

16    **THE COURT:**  Oh, you're right.  Thank you for pointing

17 that out.  I see that now.

18    **MR. COALTER:**  But going back through Dr. Hersh's

19 report, the court-ordered psychosexual evaluation, Dr. Hersh on

20 page 20 kind of sums up Mr. Wood's situation, indicates he's 44

21 years old, was living in Mount Airy.  And he's got -- Dr. Hersh

22 notes he's got a history of significant psychological and

23 behavioral difficulties.  His psychological functioning has

24 been impacted by mental illness, trauma, and maladaptive

25 personality characteristics.  He was placed in an out-of-home

US v. Walter Wood  -- Sentencing  -- 1/19/21

therapeutic setting from age 9 to 19, and he received inpatient
psychiatric treatment multiple times as a child and
adolescence.  He was reported included in the Willie M. class
as a child, indicated that he displayed severe mental or
emotional difficulties as well as violent or assaultive
behavior.  He stated that he was diagnosed with bipolar
disorder and schizophrenia, and the medical records reviewed by
the United States Probation Office confirmed those diagnoses.

As an adult, he's received disability payments for
mental illness, although he was employed up until 2015 when his
medical problems prevented him from working.

He received outpatient mental health treatment as an
adult, although he was not receiving any treatment during the
period of his arrest.  He stated that he was -- Mr. Wood was
seeking mental health treatment prior to his arrest.

Dr. Hersh diagnosed Mr. Wood with post-traumatic
stress disorder.  On page 21, Dr. Hersh indicates Mr. Wood has
experienced considerable trauma during his lifetime.  He was
sexually abused on multiple occasions by multiple perpetrators
between ages 6 and 9.  He was apparently exposed to violence
between his parents on at least one -- and at least once as a
child.  He's experienced physical trauma, including head injury
at age 14 or 15, which led to a coma lasting two and a half
months.  As an adult, he experienced the violent deaths of two
close friends.

US v. Walter Wood  -- Sentencing  -- 1/19/21

1          Dr. Hersh also diagnosed Mr. Wood with other

2    specified personality disorder.  This is a pervasive pattern of

3    instability, of interpersonal relationships, self-images and

4    effects, and marked impulsivity that begins by early adulthood

5    and is present in a variety of contexts.  Mr. Wood displays

6    affective instability and a marked reactivity in mood.  He is

7    likely to be impulsive and reckless and have difficulty

8    controlling his anger.

9          Despite having been diagnosed with schizophrenia,

10   bipolar disorder, and depression for many years, over a 35-year

11   period, Dr. Hersh currently rules out those diagnoses in favor

12   of post-traumatic stress disorder.

13         Dr. Hersh also ruled out the diagnosis of pedophilic

14   disorder.  On page 24, Dr. Hersh concluded that Mr. Wood

15   displays some protective factors that may help reduce his risk

16   of sexual recidivism.  Mr. Wood has a history of sexual

17   relationships with adult women, which indicate he can meet his

18   sexual needs in appropriate ways.

19         Although he has a history of alcohol and drug use, he

20   reports that he has dramatically decreased his substance use in

21   recent years.

22         He expresses some understanding of why his offensive

23   conduct was wrong, and he's open to receiving professional

24   treatment.

25         Mr. Wood's mother passed away in 2007 due to chronic

US v. Walter Wood  -- Sentencing  -- 1/19/21

obstructive pulmonary disease, or COPD.  His father, Bill Wood,
is 74 years old and also suffers from COPD as well as diabetes
and severe bronchitis.  Mr. Wood, his father, Bill Wood, was
recently -- had recently had a stroke caused by atrial
fibrillation and has been in the hospital for several weeks and
rehab after that, although it looks like he's going to be
released.

Walter Wood has one sister, Billy Jo Johnson, who is
in the courtroom, Your Honor, who supports Mr. Wood.
Ms. Johnson states that Mr. Wood is a really good person.
She's quoted as saying, "He'd go without in order to help
others."

Mr. Wood's uncle John Reece is also here to support
him.

Mr. Wood's mental health issues stem from a traumatic
childhood.  Before age 9, he was --

**THE COURT:**  Can I ask you -- just a second.  I
somehow overlooked in Dr. Hersh's report this coma when he was
14 or 15.  That's not in the presentence report.  If it is, I
overlooked it there too.

**MR. COALTER:**  It's referenced --

**THE COURT:**  I see it in Dr. Hersh's report now that
you pointed it out to me.

**MR. COALTER:**  Right.

**THE COURT:**  I see it on page -- I'm looking at the

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  ECF page numbers.  It looks like page 22.

2        MR. COALTER:  Right.

3        THE COURT:  Was that -- I just didn't see -- maybe he

4  discussed that elsewhere or explained that.  I just missed -- I

5  just didn't see that earlier.

6        MR. COALTER:  I saw it in Dr. Hersh's report, Your

7  Honor.  I cannot recall whether it ended up in the presentence

8  report or not.

9        THE COURT:  I didn't see it, but that doesn't mean it

10  isn't there.  I'm usually pretty good about catching that kind

11  of thing.  Let's see if Dr. Hersh talks about it in the --

12        MR. COALTER:  Right.

13        THE COURT:  -- earlier.

14        MR. COALTER:  There is a reference to the scar that

15  was associated with it, I believe.

16        THE COURT:  Oh, here it is.  It's on page -- this is

17  information from Mr. Wood on page 12 -- again, I'm looking at

18  the ECF page -- 1991, injured riding his bicycle and in a coma

19  for two and a half months, and then hit on the head with a pipe

20  in 2007.

21        MR. COALTER:  Yes, Your Honor.

22        THE COURT:  Okay.  So go ahead.  I'm sorry.  I just

23  wanted to kind of get a grip on that because a coma for two and

24  a half months is kind of unusual.

25        MR. COALTER:  I mean, his physical situation is so

US v. Walter Wood  -- Sentencing  -- 1/19/21

1   large and extensive that there is a lot to report.

2          But dealing with his traumatic childhood, when he was

3   between 6 and 8 years of age, his cousin James Linville abused

4   him both orally and anally.  Another cousin Benji did the same

5   thing.  When he was eight, his aunt's husband, Robert Wray

6   sexually, abused both Mr. Wood and his sister.  And this was

7   confirmed by Ms. Johnson.

8          This affected Mr. Wood's mental health between ages 9

9   and 19.  He lived in four groups homes and was committed to

10  five psychiatric hospitals.  Additionally, he received

11  outpatient treatment.  During this period, he was diagnosed

12  with schizophrenia, bipolar disorder, and manic depression, and

13  he was classified as Willie M.

14         His current health situation is extremely perilous.

15  As Mr. Wellman put it in his sentencing memo, he's a very sick

16  man.  He's 6'1" and 370 pounds.  According to the presentence

17  report, Dr. Hersh's report, the Defendant, and sister, he

18  suffers from morbid obesity, congestive heart failure, chronic

19  obstructive pulmonary disease which is what his mother had and

20  his father has, atrial fibrillation, hyperlipidemia, which is a

21  heart ailment, I believe, he's had a brain hematoma, Type 2

22  diabetes, acute hypoxemic respiratory failure, and as you

23  expect, high blood pressure, high cholesterol, bronchial

24  asthma, obstructive sleep apnea, and a number of other less

25  serious conditions.  He currently indicates he takes 16

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  medications.

2          Other than the coma as a child, his most serious

3  hospitalization was May 7, 2018, when he had a heart attack;

4  and according to Ms. Johnson, his sister, and the Defendant, at

5  some point his heart flatlined before he was revived.

6          When he was arrested and in state custody on these

7  same charges, he was transferred to Central Prison because the

8  local county jails could not manage his medical conditions.

9          With regard to the instant offense, Mr. Wood

10 recognizes the seriousness and wrongfulness of his conduct.  He

11 explained that to Dr. Hersh.  On the day of his arrest, he

12 voluntarily admitted to the offense and the offense conduct and

13 that his actions were wrong.  He's accepted responsibility for

14 his criminal conduct.

15          In the instant case, there was no in-person meeting

16 despite attempts by the undercover law enforcement to set up

17 such a meeting.  Mr. Wood made no attempt to meet the purported

18 victim.  He was satisfied with the virtual relationship, and

19 this is consistent with his relationship with Minor 1, which

20 was a relationship that extended over apparently five years,

21 and it was entirely virtual.

22          His criminal history is noted in the presentence

23 report.  The majority of the Defendant's convictions are

24 traffic-related offenses.  He has no prior felony convictions.

25 His longest sentence was in 2007, and that sentence was

Case 1:19-cr-00639-CCE   Document 45   Filed 08/18/21   Page 12 of 29

1  apparently 150 days at the expiration of 120.  I'm not sure if

2  that was modified any bit on the violation, but at least the

3  original sentence was set up to be nine months.  And that

4  obviously pales in comparison to what he is facing now.

5        While we are not disputing any of the relevant

6  conduct, there are some things that the Court should consider

7  when assigning weight to certain relevant conduct.  Regarding

8  T.M. in paragraph 40, that ultimately -- the case ultimately

9  went to superior court.  A full investigation was done, and he

10  was convicted of contributing to the delinquency of a minor.

11  That's a fairly broad offense and is not necessarily sexually

12  related.  For that to have happened, given the allegations, the

13  State had some problems with its case.

14        T.M. indicates that she and Mr. Wood were in a dating

15  relationship at the time.  Mr. Wood brought T.M. to meet his

16  family, and she told them that she was 17 years old, going on

17  18.  Now, while that was not necessarily a legal defense, I

18  would argue that it goes to the weight that should be given.

19  Later, and I'm not sure how many years later, T.M. ultimately

20  stabbed Mr. Wood at some point.

21        With regard to Minor No. 1, that was a five-year

22  relationship.  There's allegations in the presentence report

23  that she knew him as James Allen.  However, Mr. Iverson and I

24  have reviewed the Snapchat video, and there's at least one in

25  there where she's calling him Cliff.  And these are screenshots

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  of the Snapchat, and she calls him Cliff. So she did know his

2  name. She indicates that Mr. Wood did request nude images, but

3  did not request any particular acts.

4  In reviewing the Government's position paper, the

5  Government places some emphasis on the Static-99R with regard

6  to future dangerousness. First, I would point out that

7  Dr. Hersh has ruled out a pedophilic disorder for Mr. Wood.

8  The Static-99 is a fairly blunt instrument. It's not

9  individualized. It's a test -- it contains several simple

10  yes-no questions to predict future recidivism. In reading

11  Dr. Hersh's report as a whole, he didn't seem to emphasize it.

12  Of the questions that apply to Mr. Wood, about four of them are

13  questionable. One was he has not lived long term with an

14  intimate partner. However, Dr. Hersh's report indicates that

15  Mr. Wood had a long-term relationship with girlfriend Crystal,

16  and they occasionally cohabitated.

17  Another issue was he was previously convicted of a

18  nonsexual violent offense. That was a 1994 assault on a female

19  offense when Mr. Wood was 18 years old, living in a group home.

20  On page 6 of Dr. Hersh's report, Mr. Wood denies actually

21  committing the offense and indicated basically he was asked to

22  make allegations against someone else and refused to do so, and

23  that led to the charges against him.

24  The next question that had some issues with it was he

25  was previously convicted of a sexual offense. Well, he was

US v. Walter Wood -- Sentencing -- 1/19/21

1 convicted of attributing to the delinquency of a minor.  That
2 could be as innocuous as assisting T.M. from going to school --
3 picking her up at school.  And he has a high number of
4 sentencing dates, and half of those convictions are traffic
5 offenses.
6           There are three items such as he's been convicted of
7 noncontact sex offense, committed a sex offense against an
8 unrelated victim, and committed a sex offense against a
9 stranger that are all related to the instant offense and
10 obviously apply.  But the four I have gone over, I would argue
11 there's some question to those.
12           The presentence report recommends a variance to 180
13 months.  The presentence report notes kind of the following
14 factors in support of that:
15           There's a two-level enhancement in the guideline
16 range for use of a computer and five-level enhancement for
17 600-plus images, and those regularly appear in these cases and
18 don't really differentiate Mr. Wood from the run-of-the-mill
19 case.
20           The Defendant agreed to a psychosexual evaluation.
21 The mental health diagnosis for Mr. Wood, that he was a Willie
22 M. child, it's noted that this classification may correlate
23 between mental health and criminal record.
24           His health issues, quite frankly, Mr. Wood has a
25 shorter -- based on his mental health issues, will have a

US v. Walter Wood  -- Sentencing  -- 1/19/21

1 shorter life expectancy than most people, including most

2 inmates.  He has a -- as such, he has a much greater chance of

3 dying in prison than the typical defendant.

4           The majority of his offenses are traffic related, and

5 he's been able to control his substance abuse for approximately

6 ten years.

7           I mentioned earlier that his father, Bill Wood, just

8 came out of the hospital after suffering a stroke.  Mr. Wood's

9 chief concern is that his father may die before he's released.

10 His father is in poor health, and that -- you know, I think

11 even when he was arrested when the -- at some point -- it may

12 be in Dr. Hersh's report -- he expressed concern that once he

13 gets out of prison, that there will be nobody there, nobody

14 left.  And I think that's his biggest concern.

15           We would request a downward variance to between 120

16 and 180 months, a physical examination and treatment for

17 Mr. Wood, mental health evaluation, probably substance abuse

18 treatment.  While he's got a fairly good handle on his illegal

19 substance abuse use, currently he takes a lot of medications.

20 And the Court has seen many people come before it where

21 substance abuse problems start with prescription medication.

22           Ask that he be housed as close to his family in Mount

23 Airy as possible, and at the appropriate time we'd ask the

24 Court to dismiss the remaining counts from the indictment.

25           **THE COURT:**  All right.  Thank you, Mr. Coalter.

US v. Walter Wood  -- Sentencing  -- 1/19/21

1    For the Government?

2         **MR. IVERSON:**  Yes, Your Honor.

3         The Government recommends a guideline sentence in

4    this matter.  Your Honor, the Defendant engaged in a sexually

5    charged conversation with an individual he believed to be a

6    minor.  This is not -- this is clearly not what one would call

7    mine-run child exploitation or child pornography case.  What

8    Mr. Wood did is he disseminated child pornography on two

9    occasions to an individual he believed to be a minor.  The

10   Government would argue that he did that in an attempt to groom

11   the minor to engage in essentially online sexual interaction

12   with Mr. Wood, online I will emphasize.

13        This conduct is not Mr. Wood's only such conduct.

14   The communications found on his phone, further investigation

15   revealed that he had been engaged in a similar relationship

16   with an actual minor child for an extended period of time, at

17   least 18 months.

18        I don't know if it was as long as five years, as the

19   minor reported, but we have forensic evidence revealing that it

20   went on for over a year where they were regularly engaged in

21   online communication, including that of a sexual nature and the

22   minor sending Mr. Wood pictures of herself.

23        Given these factors, the Government believes that a

24   guideline sentence is appropriate.

25        **THE COURT:**  All right.  Mr. Wood, if you would stand.

1            If there is anything you want to tell me before I
2    make the final decision in your case, I'm glad to hear from
3    you.  You do not have to speak if there's nothing you want to
4    add; but if there is anything you want to tell me, this is your
5    chance.  You just need to stand close to the microphone since
6    we're all wearing these masks because of the pandemic.
7            Go ahead.
8            **THE DEFENDANT:**  Well, Your Honor, I'd just like to
9    say that I know what I did was wrong, and I just apologize for
10   the people that I hurt, my family, their families, and I
11   apologize for having to waste the Court's time and everything
12   for this.
13           **THE COURT:**  So I talked to you a few months back when
14   I gave you a new lawyer, and you seem calmer today.
15           **THE DEFENDANT:**  Yeah.
16           **THE COURT:**  Are you doing better?
17           **THE DEFENDANT:**  A little bit.
18           **THE COURT:**  Okay.  Thank you.  I appreciate that.
19   You can be seated.
20           Let me look back through everything.
21       (Pause in the proceedings.)
22           **THE COURT:**  Mr. Coalter, did you have anything to say
23   about the suggested conditions of supervised release or the
24   standard conditions?  I took a look.  They seemed all
25   appropriate, but if you thought any of them were -- let me look

            US v. Walter Wood  -- Sentencing  -- 1/19/21

1  back at them actually, because we just had that decision out of

2  the Fourth Circuit.  I want to be sure.

3          **MR. COALTER:**  No, Your Honor.  I can see the

4  relevance of the financial conditions, and I can see why they

5  were added, but that would be the only thing I would ask the

6  Court maybe to consider.

7          **THE COURT:**  He is going to have the restitution;

8  right?  You all have agreed, and there's a stipulation on

9  restitution?

10          **MR. COALTER:**  There is, Your Honor, and it's in the

11  amount of $5,000.

12          **THE COURT:**  So Special Condition 9 is the one about

13  not possessing a computer without prior approval, and that

14  basically covers a smartphone.  Under the circumstances of the

15  offense, that would appear to be appropriate.  Of course, I

16  don't know what the world is going to be like when he gets out.

17  You know, he can certainly -- you might not be able to walk

18  around in the world without a computer when he gets out.

19          **MR. COALTER:**  Yes, Your Honor.

20          **THE COURT:**  You know, if that's the case, that would

21  definitely be a change of circumstance.  He could seek some

22  relief from that condition.

23          Let's see.  It does say -- you may not even be able

24  to do stuff on paper when he gets out, but that's a little

25  uncertain at this point.  I would just note that condition.  It

US v. Walter Wood  -- Sentencing  -- 1/19/21

1   seems appropriate, in view of the nature and circumstances of
2   the offense, and it actually seems like a very good idea.  But
3   before he gets out, if the world has changed even more, as it
4   probably will -- we just don't know how -- you know, that one
5   may bear revisiting in light of whatever the circumstances are
6   then, so -- which I am not -- I don't have a crystal ball.  So
7   I don't know what it's going to be like then, but it's -- maybe
8   there will be some mechanism that will work better than just
9   the prohibition.  Of course, it does authorize approval by the
10  probation officer, you know, depending on his situation.
11            **MR. COALTER:**  Yes, Your Honor.
12            **THE COURT:**  Okay.  Thank you.
13            Does the Government have any comments about the
14  standard or suggested conditions of supervised release?
15            **MR. IVERSON:**  No, Your Honor.
16            **THE COURT:**  The other thing about the suggested
17  conditions I think I might modify, the only thing, would be
18  No. 13 where the probation officer is suggesting that he submit
19  to a polygraph test.  I have no problem with that if it's part
20  of sex offender treatment, which I know it often is.  In any
21  other context, I'm not so sure I really feel all that
22  comfortable with it.
23            Did the Government want to be heard in support of
24  that condition?
25            **MR. IVERSON:**  No, Your Honor.

US v. Walter Wood  -- Sentencing  -- 1/19/21

1          **THE COURT:**  Any problem with that more narrow special

2     condition?

3          **MR. COALTER:**  No, Your Honor.  I know it's going to

4     be part of sex offender treatment.

5          **THE COURT:**  Yeah, it usually is certainly, and I have

6     no problem with that.  That seems entirely appropriate based on

7     the 20-some-odd -- 25-some-odd years I have been looking at

8     these kinds of thing.

9          Mr. Wood, if you would stand.

10          The Court has reviewed the presentence report and

11     takes the guidelines into account on an advisory basis.  I've

12     reviewed all of the memos submitted by counsel and the

13     exhibits.  I note Mr. Iverson's qualifications of some of his

14     exhibits, and I have read Dr. Hersh's report.  I appeared to

15     have overlooked the coma; but when I went back, it was clearly

16     there.  I had not highlighted it, but I am so glad that you

17     pointed that out, Mr. Coalter.  I did read the whole thing

18     earlier.

19          You know, ordinarily, I do think the guidelines

20     overstate a bit because of the way they count for a computer

21     and number of images, but in his case I don't think that is so

22     because the guideline recommendation has already come down by

23     virtue of the statutory maximum.

24          As I look at his situation, with two previous

25     sexually exploitive relationships and the nature and

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  circumstances of this offense, you know, clearly the protection

2  of the public is, it seems to me, the primary factor to be

3  taken into account here.  I appreciate all of his health

4  problems and all of his mental health problems, but, you know,

5  he engaged in this offense just a couple of months after he had

6  his heart attack, and so bad health doesn't seem to really

7  restrain him.  And I'm just -- you know, his mental health

8  issues seem to be part and parcel of the reasons, you know,

9  kind of underlying the criminal conduct here.  They don't

10 appear to mitigate, I guess I would say, in terms of reducing

11 the risk of recidivism or protecting the public.  They appear

12 to increase the risk of recidivism.

13          Certainly I hope he can get some treatment.  He does

14 appear to have developed some insights into his situation.  And

15 as Dr. Hersh points out, the older he is, the lower the risk.

16 That was in his report at page 25.  So at least getting him to

17 age 60 certainly seems to be a good thing in terms of reducing

18 his risk of recidivism.

19          So in order protect the public because he is a repeat

20 offender, he does have a bad record, even though most of it

21 seems to have stopped, as Mr. Coalter pointed out recently, and

22 the conduct continued, despite his serious health issues, I

23 think a sentence at the guideline range is appropriate.

24          I have looked at the -- as I say, he's open to

25 treatment.  He has some understanding; he's reduced his

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  substance abuse; and he does recognize the conduct was wrong.

2  I am not persuaded that those factors should result in a

3  below-guideline sentence.  They just don't outweigh the very

4  serious risk of recidivism here.  And the need to protect the

5  public is, in my evaluation, paramount.

6           So 240 months in the custody of the Bureau of

7  Prisons.

8           He will need to pay the special assessment, which --

9  what is that in his case?  It's just $100.  No.  What about

10 this 5,000-dollar JVTA assessment?

11          **MR. IVERSON:**  I believe the conduct predates the

12 enactment of that.

13          **THE COURT:**  Okay.  So that doesn't apply.  So it's

14 just the 100-dollar special assessment; right?

15          **MR. IVERSON:**  That's correct.  And even if that did

16 apply, he's indigent, so it wouldn't apply.

17          **THE COURT:**  And then he's got restitution, which the

18 parties have handed up a stipulation, $5,000 which the clerk

19 shall pay pursuant to the stipulation.

20          **THE PROBATION OFFICER:**  Your Honor?

21          **THE COURT:**  Yes.

22          **THE PROBATION OFFICER:**  I would say that the JVTA

23 would have applied because of the conduct that went through;

24 but my recommendation was not to recommend it because he was

25 indigent.  However, the Court would need to make that finding.

US v. Walter Wood  -- Sentencing  -- 1/19/21

1          **THE COURT:**  I see.  All right.  So it may or may not

2  apply; but if it does apply, he's clearly indigent.

3          **MR. COALTER:**  Yes, Your Honor.

4          **THE COURT:**  So I will not impose that special

5  assessment.

6          I will not impose a fine based on inability to pay.

7          And I will recommend to the Bureau of Prisons

8  intensive substance abuse treatment, mental health treatment,

9  and a medical evaluation for multiple chronic health problems.

10  I'll ask the clerk to be sure to put that in the judgment so

11  they see it.  That's obviously a serious need here.

12          And subject to those needs, that he be housed as

13  close as possible to his family in Mount Airy.

14          I'll require him to comply with the mandatory and

15  standard conditions of supervised release.  Let's see.  I will

16  place him on supervised release for 15 years.  That actually

17  seems a little long.  He's going to be 62 or -3 when he gets

18  out probably.  So I suppose -- I don't know.  I never know -- I

19  can't predict how long anybody is going to live.  Let me leave

20  it at 15 years.  He's got this record and a long period of

21  supervision is appropriate.

22          So mandatory and standard conditions, I will -- I

23  will adopt in full the suggested conditions by the probation

24  officer for the reasons stated in the presentence report

25  without objection, except I will modify the one about the

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  polygraph testing to limit that to polygraph testing in

2  connection with mental health or sex offender treatment;

3  otherwise, not.

4          Dismiss Counts One, Three, and Four; is that right?

5          **MR. COALTER:**  Yes, Your Honor.

6          **THE COURT:**  Okay.  Those are dismissed.

7          And what have I forgotten, or what else do I need to

8  do for the Government?

9          **MR. IVERSON:**  If you will announce for the record

10  that the judgment will incorporate the forfeiture order which

11  was issued in May of this year.

12          **THE COURT:**  Oh, yes, thank you for reminding me.

13          **MR. IVERSON:**  And then Ms. Patton is absolutely right

14  about the JVTA.  I was thinking of the AVAA.  I apologize.  I'm

15  usually pretty good at keeping those straight, but not today.

16          **THE COURT:**  Thank you for correcting that and telling

17  her she was right.

18          I will adopt the forfeiture proceedings; but in any

19  event, I am going to waive those provisions since he doesn't

20  have any money to pay them.

21          Anything else you would ask for, Mr. Coalter?

22          **MR. COALTER:**  No, Your Honor.

23          **THE COURT:**  Yes?

24          **THE PROBATION OFFICER:**  I just want to make sure, for

25  the Bureau of Prisons -- and restitution also I wanted to make

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  sure we cleared that up.  For the BOP, I understood you

2  mentioned mental health, substance abuse and medical, close to

3  home.  Did you mention sex offender treatment?

4            **THE COURT:**  No, but I should.  Thank you.

5            Mental health treatment and sex offender treatment.

6            **THE PROBATION OFFICER:**  And then if we can mention --

7  I think there is a stipulation for the restitution.

8            **THE COURT:**  Yes.  Stipulation of $5,000.  And I will

9  waive interest on that just for simplicity sake.  He will need

10  to pay that -- if he doesn't get it paid off while he's in

11  custody, he will need to pay it on supervised release.

12            Did you have that in there?  Yes.  $100 a month.

13            How much is his disability?

14            **MR. COALTER:**  $750.  I ask the Court to consider $50

15  a month.

16            **THE COURT:**  Yeah, I'll reduce that to $50 a month.

17  That's paragraph No. 2 in the recommended conditions.  I will

18  reduce that to $50 a month to begin 60 days after his

19  supervised release begins.

20            **THE PROBATION OFFICER:**  Sorry, Your Honor.  Just to

21  confirm, would it be to the victim noted in paragraph 112?  I

22  just wanted to confirm that that is who it would go to.

23            **THE COURT:**  Sarah depicted in Marineland I; is that

24  the person in paragraph 12?

25            **THE PROBATION OFFICER:**  It is in paragraph 112.

US v. Walter Wood  -- Sentencing  -- 1/19/21

1          **THE COURT:**  112, oh, sorry.  No wonder I wasn't
2   seeing it.
3          **THE PROBATION OFFICER:**  And that's what's noted in
4   the stipulation?
5          **THE COURT:**  Yes, that's what's noted in the
6   stipulation.
7          **THE PROBATION OFFICER:**  Thank you.
8          **THE COURT:**  Yes, that's right.
9          Anything else I have forgotten or need to address?
10         Did I say his appeal rights?
11         **MR. COALTER:**  There's an appeals waiver in here.  I
12  will explain to him the exceptions.  I already have, but I will
13  go over it with him.
14         **THE COURT:**  Thank you for reminding me of that.  If
15  he does think there is a reason to appeal, he has to do that in
16  writing within 14 days of the entry of the Court's judgment.
17         **MR. COALTER:**  Yes, Your Honor.
18         **THE COURT:**  Anything else, Mr. Iverson?
19         **MR. IVERSON:**  No, Your Honor.
20         **THE COURT:**  No?
21         I appreciate his sister and uncle being here.  This
22  kind of offense is really hard on families.  I know it's hard
23  to be here even in normal times, and in a pandemic, it's even
24  worse.  I'm sure Mr. Wood greatly appreciates it, and I, too,
25  want to thank you for being here.

US v. Walter Wood  -- Sentencing  -- 1/19/21

1          Court is adjourned.

2      (END OF PROCEEDINGS AT 2:50 P.M.)

3

4                          ******

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

US v. Walter Wood  -- Sentencing  -- 1/19/21

1  UNITED STATES DISTRICT COURT

2  MIDDLE DISTRICT OF NORTH CAROLINA

3  CERTIFICATE OF REPORTER

4

5

6       I,  Briana L. Bell, Official United States Court

7  Reporter, certify that the foregoing transcript is a true and

8  correct transcript of the proceedings in the above-entitled

9  matter prepared to the best of my ability.

10

11       Dated this 18th day of August 2021.

12

13

14       _____
                 Briana L. Bell, RPR
15               Official Court Reporter

16

17

18

19

20

21

22

23

24

25

US v. Walter Wood  -- Sentencing  -- 1/19/21