IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA    *   Case No. 1:19CR639-1
                              *
vs.                            *   Greensboro, North Carolina
                              *   May 12, 2020
WALTER CLIFTON WOOD,       *   9:55 a.m.
                              *
              Defendant.     *
*******************************

**TRANSCRIPT OF CHANGE OF PLEA HEARING VIA VIDEO**
BEFORE THE HONORABLE CATHERINE C. EAGLES
UNITED STATES DISTRICT JUDGE

APPEARANCES VIA VIDEO:

For the Government:         NICOLE R. DUPRE, ESQUIRE
                           Office of the United States Attorney
                           101 S. Edgeworth Street, 4th Floor
                           Greensboro, North Carolina 27401

For the Defendant:          AARON B. WELLMAN, ESQUIRE
                           Ivey, McClellan, Gatton & Siegmund, LLP
                           Post Office Box 3324
                           Greensboro, North Carolina 27402

Court Reporter:             Lori Russell, RMR, CRR
                           P.O. Box 20593
                           Winston-Salem, North Carolina 27120

Proceedings recorded by stenotype reporter.
Transcript produced by Computer-Aided Transcription.

1 **P R O C E E D I N G S**

2 (Defendant present via video.)

3 **THE COURT:** Good morning. Court is in session. I'm a

4 minute or two early. Is everybody ready? Yes. Okay.

5 The Court calls the case of United States against Walter

6 Clifton Wood, proceeding by video conference.

7 First, we'll just be sure that the technology is working

8 well.

9 I'll ask the deputy clerk if before court started just

10 moments ago you were able to get everybody online without

11 problem, and if everybody could see and hear.

12 **THE CLERK:** Yes, Judge.

13 **THE COURT:** Did you give Mr. Wellman and Mr. Wood an

14 opportunity to have a private breakout session?

15 **THE CLERK:** Yes, Judge.

16 **THE COURT:** Mr. Wellman, can you see and hear?

17 You have to unmute yourself.

18 **MR. WELLMAN:** Okay. Yes, I can.

19 **THE COURT:** Okay. And were you and Mr. Wood able to

20 have a private conference, or did you not need that?

21 **MR. WELLMAN:** We had a private conference as

22 necessary, Your Honor.

23 **THE COURT:** Right. If you need one again at any point

24 during the proceedings, just let me know.

25 **MR. WELLMAN:** Thank you.

1          **THE COURT:**  Thank you.

2      Ms. DuPre is here for the Government.

3      Have you been able to see and hear?

4          **MS. DUPRE:**  Yes, ma'am.  Thank you.

5          **THE COURT:**  Okay.  Mr. Wellman, just mute yourself

6   after you finish talking each time.  It improves the audio.

7   Thank you.

8      I see the court reporter.

9      Have you been able to see and hear everyone?

10     She's nodding yes.

11     And my law clerk is on the line.

12     Can you see and hear everyone?

13     She's nodding yes.

14     Okay.  Mr. Wood, good morning.

15         **THE DEFENDANT:**  Good morning.

16         **THE COURT:**  Have you been able to see and hear

17  everyone?

18         **THE DEFENDANT:**  Yes, ma'am.

19         **THE COURT:**  And were you and your lawyer able to have

20  a private conference, just the two of you, before court

21  started?

22         **THE DEFENDANT:**  Yes, ma'am.

23         **THE COURT:**  I just want to let you know the court

24  reporter is not there for that.  Nobody is listening in, so

25  that is a confidential communication; and if you need to talk

1 to your lawyer during this hearing, you just let me know; and

2 we can arrange that.  Okay?

3             **THE DEFENDANT:**  Okay.

4         **THE COURT:**  The court reporter is present.  She's

5 preparing the official record of these proceedings by way of

6 written transcript.

7     There is no video recording of this hearing.  We don't

8 video live court appearances when, you know, the hearings

9 happen in court, so we don't do a video recording of this

10 either.

11     If at any time anyone has trouble hearing or seeing, please

12 get my attention and let me know so we can do our best to fix

13 that.  It is important for everyone to see and hear.

14     Mr. Wood, you in particular have that right to see and hear

15 everything that's happening.  So if you have any problems with

16 that, you let me know.  All right?

17             **THE DEFENDANT:**  Yes, ma'am.

18         **THE COURT:**  The prerequisites for a remote video

19 hearing are in place with findings by the Judicial Conference

20 and an order by the chief judge of this district authorizing

21 video conferencing for felony guilty pleas.

22     These hearings can take place only if the defendant

23 consents and if the presiding judge, which would be me, finds

24 that delay would cause serious harm to the interests of

25 justice.  I'll have some questions about that as we go along to

1  be sure this is appropriate for video hearing.

2      All right.  We'll get started.  I'll start by --

3  Mr. Wellman, with you.

4      Have you had enough time to consult with Mr. Wood and to

5  review the discovery and other relevant information?

6          **MR. WELLMAN:**  I have.

7          **THE COURT:**  And is -- the person on the video screen

8  identified as Mr. Wood, is he the person you've been dealing

9  with here as the defendant?

10          **MR. WELLMAN:**  Yes, ma'am.

11          **THE COURT:**  Are you ready to proceed with the change

12  of plea hearing?

13          **MR. WELLMAN:**  We are.

14          **THE COURT:**  Do you believe Mr. Wood understands the

15  charges and the nature of this hearing?

16          **MR. WELLMAN:**  Yes, Your Honor.

17          **THE COURT:**  Have you consulted with him about whether

18  he wants to consent to conducting this hearing by video

19  conference?

20          **MR. WELLMAN:**  I have.

21          **THE COURT:**  And what's your understanding?

22          **MR. WELLMAN:**  That he is willing to proceed by video

23  conference.

24          **THE COURT:**  Has anyone made any threats or promises to

25  induce his guilty plea, other than promises in the plea

1 agreement?

2          **MR. WELLMAN:**  Not to my knowledge.

3          **THE COURT:**  And it's my understanding he wants to

4 plead guilty to Count Two, transporting child pornography,

5 pursuant to a plea agreement; is that correct?

6          **MR. WELLMAN:**  That is correct.

7          **THE COURT:**  Is it your recommendation -- is it your

8 recommendation that the Court accept his guilty plea?

9          **MR. WELLMAN:**  It is.

10          **THE COURT:**  I know this pandemic has disrupted client

11 communications, along with all kinds of other communications

12 out there in the world.  I don't want you to tell me about the

13 substance of your communications with Mr. Wood, but I do want

14 to confirm that you've been able to talk to him.  If you can

15 just summarize the ways and means that you've communicated with

16 him about this case leading up to today.

17          **MR. WELLMAN:**  Your Honor, I have continued to visit

18 him at the Alamance County jail in person.

19          **THE COURT:**  Okay.  Great.  Thank you.

20     And did you review the written factual basis proffered by

21 the Government with him?

22          **MR. WELLMAN:**  I did.

23          **THE COURT:**  Does he have copies of his plea agreement

24 and the factual basis?

25          **MR. WELLMAN:**  Yeah, I believe so.

1          **THE COURT:**  You gave them to him anyway?

2          **MR. WELLMAN:**  Yes.

3          **THE COURT:**  I'll ask him in a second.

4      Okay.  Mr. Wood, we're ready to start with my questions to

5  you.  The first thing that we will do is that the courtroom

6  deputy will affirm you to give truthful answers to my

7  questions, so please listen to her.

8      (The Defendant was placed under oath.)

9          **THE COURT:**  All right.  Mr. Wood, you are under oath,

10  and it is a crime to tell me a lie.

11      Do you understand that?

12          **THE DEFENDANT:**  Yes, ma'am.

13          **THE COURT:**  And can you see and hear me all right?

14          **THE DEFENDANT:**  Yes, ma'am.

15          **THE COURT:**  Tell me your full name.

16          **THE DEFENDANT:**  Walter Clifton Wood.

17          **THE COURT:**  How old are you?

18          **THE DEFENDANT:**  Forty-three.

19          **THE COURT:**  How far did you go in school?

20          **THE DEFENDANT:**  I graduated high school and got three

21  years of college.

22          **THE COURT:**  Do you take any prescription medicine?

23          **THE DEFENDANT:**  Yeah, I take quite a few for my heart

24  and everything.

25          **THE COURT:**  All right.  So you take some -- do you

1  take anything that causes you to be disoriented or confused?

2          **THE DEFENDANT:**  No, ma'am.

3          **THE COURT:**  So you take several medicines for your

4  heart.  Do you take medicines for any other condition?

5          **THE DEFENDANT:**  No.

6          **THE COURT:**  No.

7      Are you getting any treatment for any mental health issues

8  or addiction?

9          **THE DEFENDANT:**  Not -- not at the moment.

10          **THE COURT:**  Not at the moment.  Were you before you

11  were arrested?

12          **THE DEFENDANT:**  No, ma'am.

13          **THE COURT:**  And have you recently been treated for

14  anything, say maybe three or four months ago while you were in

15  custody, if you've been in custody that long?  It sounded like

16  you had gotten some treatment for mental health issues.  I just

17  was trying to figure out when that was.

18          **THE DEFENDANT:**  Well, I put a request in to see me for

19  depression, but they never did see me, so --

20          **THE COURT:**  I see.  When was the last time you had any

21  alcohol, drugs, or medicine that was not prescribed for you?

22  Approximately.

23          **THE DEFENDANT:**  Approximately, probably about six

24  years ago.

25          **THE COURT:**  Six years.  Okay.

1    Are any of the medicines you're taking pain medicines or
2  narcotics?
3          **THE DEFENDANT:**  No, ma'am.
4          **THE COURT:**  And are -- if you have any trouble hearing
5  me, as I say, you just let me know.
6    Did you receive a copy of the indictment with the charge --
7  written charges against you?
8          **THE DEFENDANT:**  Yes, ma'am.
9          **THE COURT:**  Were you able to read it?
10         **THE DEFENDANT:**  Yes, ma'am.
11         **THE COURT:**  Did you understand the indictment and the
12  charges you are facing?
13         **THE DEFENDANT:**  Yes, ma'am.
14         **THE COURT:**  Have you had enough time to talk to your
15  attorney about your case?
16         **THE DEFENDANT:**  Yes, ma'am.
17         **THE COURT:**  Have you fully discussed the charges with
18  him and talked to him about your situation, the evidence
19  against you, and any defenses you might have?
20         **THE DEFENDANT:**  Yes, ma'am.
21         **THE COURT:**  Have you talked to him about the penalties
22  for these crimes and the consequences of a guilty plea?
23         **THE DEFENDANT:**  Yes, ma'am.
24         **THE COURT:**  Have you talked to him about your right to
25  consent to this video hearing, and your right to not consent

1  and to wait until we can do it in person?

2          **THE DEFENDANT:**  Yes, ma'am.

3          **THE COURT:**  Are you satisfied with his representation?

4          **THE DEFENDANT:**  Yes, ma'am.

5          **THE COURT:**  Now, we're here this morning because

6  you've signed a written plea agreement indicating you want to

7  plead guilty to Count Two, transporting child pornography.

8  Before you can do that, I have a number of questions to ask you

9  to be sure you understand your right to a trial, the elements

10  of this crime, the right to be physically present for this

11  hearing, penalties for this crime, and the sentencing process.

12  We'll also go over your plea agreement.

13      After I go over all those things with you, I'll ask you how

14  you plead to Count Two, transporting child pornography.  If you

15  want to go forward with the guilty plea, you can say, "Guilty."

16  If you do not, if you would rather have a trial, you tell me

17  then or anytime leading up to (indiscernible audio) --

18      (Court reporter requested clarification.)

19          **THE COURT:**  We're here today, Mr. Wood, because you

20  have signed a written plea transcript indicating you want to

21  plead guilty to Count Two, transporting child pornography.

22  Before you can do that, I need to go over a number of things

23  with you to be sure you want to consent to a video hearing

24  today, to be sure you understand your right to a trial, to be

25  sure you know the elements of this crime and the penalties for

1  it, to be sure you understand how the sentencing process works,

2  and to be sure we're all on the same page about your plea part.

3      At the end of all those questions, I'll ask you how you

4  plead guilty to Count Two, transporting child pornography.  If

5  you want to plead guilty pursuant to the plea agreement, you'll

6  say, "Guilty."  If you don't, if you decide you want a trial,

7  you just let me know and say, "I want to plead not guilty," or

8  "I want a trial," or words to that effect; and we'll set your

9  case for trial.

10      Do you have any questions about that process?

11          **THE DEFENDANT:**  No, ma'am.

12          **THE COURT:**  Can I confirm with the court reporter that

13  she could hear me better?

14      Yes.  Okay.  I'll try to look at the mic.  I try to look

15  down at Mr. Wood, who is near the bottom of my screen, but I'll

16  try to do better with the mic there.

17      Now, as I say, Mr. Wood, you have the right to wait to

18  plead guilty until we can bring you into the courtroom for that

19  and have an in-person hearing, but you do have the right to

20  consent to this change of plea hearing being conducted by

21  video.

22      What do you want to do about that?

23          **THE DEFENDANT:**  I'm happy with this.  I consent to the

24  video conference.

25          **THE COURT:**  All right.  You've been able to see and

1  hear everyone well?

2          **THE DEFENDANT:**  Yes, ma'am.

3          **THE COURT:**  And you understand that if at any time you

4  need to talk to Mr. Wellman privately, you can do that?  All

5  you have to do is ask.  Do you understand?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  And, of course, you also have the right to

8  hear everything and see everything.  So if at any point you're

9  having trouble with the audio or video, you just let me know;

10  and we'll repeat that.  All right?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  Now, earlier the court reporter indicated

13  I was a little garbled on one part.  Was I garbled to you?

14          **THE DEFENDANT:**  You sound fine to me.

15          **THE COURT:**  All right.  So you got to hear part of it

16  twice then?

17          **THE DEFENDANT:**  Yes.

18          **THE COURT:**  That's okay.  We sometimes have problems

19  like that in the courtroom.  So if we do have them, you just

20  tell me.

21      I find that Mr. Wood has consented voluntarily and

22  knowingly to proceed by video conference today with his change

23  of plea hearing.

24      As to his case, I note that he is in custody in the

25  Alamance County jail.  It looks like he was indicted late last

1    year.  His plea agreement was signed on April 1st.  Clearly, he

2    has a right to prompt resolution of his case; and his interest

3    in a speedy trial is important.  So if he's ready to resolve

4    his case, that would be a good reason to proceed by video,

5    especially in conjunction with the public interest in avoiding

6    delay in criminal proceedings.

7        I think there's also, given the pandemic, a public interest

8    in health and safety within the jails and moving people out of

9    the jails as quickly as we can, which is obviously facilitated

10   by an earlier resolution of the case.

11       Those things are generally true in all cases we do by

12   video.  If there are any particular additional facts that apply

13   to Mr. Wellman's –– excuse me –– Mr. Wood's situation, I'll

14   give counsel an opportunity to tell me.

15       Mr. Wellman, any additional facts that support holding this

16   matter by video conference?

17           **MR. WELLMAN:**  Well, Your Honor, just –– I know

18   Mr. Wood does have –– other than his medical conditions that he

19   takes prescriptions for, he has other concerns himself just

20   about being transported back and forth with him having to go to

21   the courthouse and so forth.  So I think just on his own

22   concerns about his health, he was more comfortable staying at

23   the jail himself.  So I would add that.

24           **THE COURT:**  Thank you for telling me that.  I should

25   have realized that because he told me about his health, his

1  heart problems.

2      Ms. DuPre, any additional facts you would point out?

3          **MS. DUPRE:**  Just given the fact that the county jails

4  are already suffering from some overcrowding during the

5  pandemic, and Mr. Wood's desire to proceed I think outweighs

6  any reason to wait for the in-person hearing, and I think the

7  interests of justice are best served by a -- continuing by

8  video conference.

9          **THE COURT:**  Okay.  The Court finds, based on the need

10 for prompt resolution of pending cases, the delays that have

11 already occurred because of the pandemic, the Defendant's

12 desire to reduce his exposure to the -- potential exposure to

13 the disease during transport to and from prison -- to and from

14 the jail and the courthouse given his specific health issues,

15 and of course, the hope that we can keep the disease out of the

16 jails, which is obviously a risk as well, those factors all

17 support conducting this hearing today.  There is a significant

18 interest in prompt resolution of this matter, and the interests

19 of justice would be harmed if we were to delay.

20      Now, as I say, Mr. Wood, you do have the right to plead not

21 guilty if you want to.  Excuse me.  Allergies.  The -- you've

22 signed a plea agreement; but if you change your mind while

23 we're talking, you just let me know.  It's very hard to change

24 your mind once you plead guilty, so you need to be sure before

25 you plead guilty.

1    Do you understand?

2            **THE DEFENDANT:**  Yes, ma'am.

3            **THE COURT:**  You do have the right to plead not guilty

4    and to have a jury trial.  At a trial you would be presumed

5    innocent, and the Government would have the burden to prove

6    your guilt beyond a reasonable doubt.  This means that they

7    would have to prove each and every element of the specific

8    crime charged before you could be found guilty of that

9    particular crime.

10   Do you understand those rights?

11           **THE DEFENDANT:**  Yes, ma'am.

12           **THE COURT:**  You have the right to the assistance of

13   counsel at all stages of the proceeding, including a trial; and

14   if you plead not guilty, Mr. Wellman will continue to represent

15   you at trial at no cost to you.

16   You have a right to be present for the trial, and to see

17   and hear the testimony of all the witnesses.  You have the

18   right to listen to the Government's witnesses when they

19   testify, and your attorney can ask them questions on

20   cross-examination.  You have the right to compel the attendance

21   of witnesses to testify in your defense if you wish, and this

22   can be done at no cost to you.

23   Do you understand these rights?

24           **THE DEFENDANT:**  Yes.

25           **THE COURT:**  You have the right to testify at trial if

1　you wish, but you are not required to do so.  You do have the

2　privilege to remain silent.  And while you have the right to

3　present evidence in your defense, you are not required to do

4　so.  If you choose not to testify or not to present evidence,

5　the Court will instruct the jury not to hold this against you

6　and not to consider it in determining your guilt.

7　　　Do you understand?

8　　　　　**THE DEFENDANT:**  Yes, ma'am.

9　　　　　**THE COURT:**  Do you have questions about any of these

10　rights related to trial I've just summarized for you?

11　　　　　**THE DEFENDANT:**  No, ma'am.

12　　　　　**THE COURT:**  If you plead guilty today, you are giving

13　up all of these rights that I just summarized.

14　　　Do you understand?

15　　　　　**THE DEFENDANT:**  Yes.

16　　　　　**THE COURT:**  I see you have a written plea agreement.

17　Have you read it?

18　　　　　**THE DEFENDANT:**  Yes, ma'am.

19　　　　　**THE COURT:**  Have you had time to talk to your lawyer

20　about it?

21　　　　　**THE DEFENDANT:**  Yes, ma'am.

22　　　　　**THE COURT:**  Do you understand the plea agreement?

23　　　　　**THE DEFENDANT:**  Yes, ma'am.

24　　　　　**THE COURT:**  It looked to me like you signed it about

25　six weeks ago on April 1st.  Do you remember signing it?

1            **THE DEFENDANT:**  Yes, ma'am.

2            **THE COURT:**  I'll ask Mr. Wellman to summarize the plea

3 agreement, particularly the plea bargain provision.

4            **MR. WELLMAN:**  Thank you, Your Honor.

5     The -- Mr. Wood -- under the plea agreement, Mr. Wood is

6 entering a voluntary plea of guilty to Count Two,

7 transportation of child pornography.  He understands the

8 elements of that offense, and he understands the burden that

9 would be on the Government to prove that offense at trial.

10     He understands that there is a mandatory minimum of 5 years

11 and maximum of 20 years associated with that offense, as well

12 as the fine amounts.  Your Honor, he also understands the

13 possibility of enhanced penalties.  Your Honor, he understands

14 the terms of supervised release that would be associated with

15 that, and he understands the special assessments that go along

16 with charges like this.

17     The plea bargaining in the case is that upon his plea of

18 guilty to Count Two, the Government will not oppose a motion to

19 dismiss the remaining three counts in the indictment; that if

20 the Court should determine that he qualifies for a two-point

21 decrease for acceptance of responsibility, the Government will

22 recommend an additional point decrease if his level is 16 or

23 more.

24     Your Honor, he is agreeing to pay whatever restitution may

25 be ordered for additional monetary provisions of the plea

1  agreement; and Your Honor, he will disclose his financial

2  affairs.

3      Your Honor, he is consenting to abandon any interest in

4  whatever property has been seized, Your Honor; and he is, Your

5  Honor -- there is a plea -- there is an appeal waiver as well

6  in exchange for the dismissal of the additional counts, with

7  certain exceptions for if Your Honor were to enter a sentence

8  above the maximum or some other unconstitutional factor.

9      That would be the substance of the plea agreement.

10      **THE COURT:**  It looks like he's giving up some rights

11  to request certain kinds of public information; and also

12  agreeing that if for any reason his guilty plea or conviction

13  was set aside, that his statements made to me today, including

14  any plea of guilty, could be entered in evidence against him.

15  Is that right?

16      **MR. WELLMAN:**  That's correct.

17      **THE COURT:**  Okay.  Mr. Wood, is that an accurate

18  summary of your agreement with the Government?

19      **THE DEFENDANT:**  Yes, ma'am.

20      **THE COURT:**  Has anybody made any promises to you that

21  Mr. Wellman did not mention?

22      **THE DEFENDANT:**  No, ma'am.

23      **THE COURT:**  And does the written agreement contain all

24  of the terms and conditions of your arrangement with the

25  Government?

1    **THE DEFENDANT:**  Yes, ma'am.

2    **THE COURT:**  Do you have any questions about the plea

3  agreement?

4    **THE DEFENDANT:**  No, ma'am.

5    **THE COURT:**  In the plea agreement, the Government has

6  agreed to make some recommendations to the Court about your

7  guideline range and acceptance of responsibility.  Those are

8  recommend -- that's a recommendation only.  It is not binding

9  on the Court.  So if the Court does not follow that

10  recommendation, that is not a reason to withdraw your guilty

11  plea.

12    Do you understand?

13    **THE DEFENDANT:**  Yes, ma'am.

14    **THE COURT:**  Has anyone made any threats or attempted

15  to force you to plead guilty against your wishes?

16    **THE DEFENDANT:**  No, ma'am.

17    **THE COURT:**  You have been charged with and your plea

18  agreement calls for you to plead guilty to Count Two,

19  transporting child pornography.  The elements of this offense

20  are that on or about July 10th, 2018, in Surry County, you

21  knowingly transported and shipped child pornography using any

22  means or facility of interstate or foreign commerce, or in or

23  affecting interstate or foreign commerce by any means,

24  including a computer -- specifically here, that you downloaded

25  child pornography from the Internet onto your computer and

1  phones, and uploaded it into your cloud storage account -- and

2  that you knew the material contained child pornography.

3      Do you understand those elements?

4          **THE DEFENDANT:**  Yes, ma'am.

5      **THE COURT:**  If you plead not guilty, the Government

6  has to prove those things beyond a reasonable doubt.  If you

7  plead guilty, you're admitting each and every one of those

8  things.

9      Do you understand?

10          **THE DEFENDANT:**  Yes, ma'am.

11      **THE COURT:**  This crime does carry a mandatory minimum

12  prison term of 5 years.  The statutory maximum is 20 years.  So

13  this means that you will be going to prison for somewhere

14  between 5 and 20 years.  That 5-year minimum is in the statute

15  enacted by Congress, so I don't have any discretion about that.

16      There's a fine of up to $250,000 that can be imposed.  The

17  fine can be larger than that should the gross gain or loss

18  caused by the crime be greater.

19      Supervised release is required after the active prison term

20  for at least five years, and it can last as long as life.

21      Forfeiture of any of the visual depictions in your phone

22  and computer is authorized by law, and I believe that's in your

23  plea agreement.

24      There is mandatory restitution, and a special assessment of

25  a hundred dollars is required, as is an additional assessment

1    because of the nature of this offense of $5,000, unless you are

2    indigent.

3        You will have to register as a sex offender.

4        Do you have any questions about any of those penalties I've

5    just been over?

6                **THE DEFENDANT:**  No, ma'am.

7                **THE COURT:**  Do you understand that I can't go below 5

8    years on your sentence; I can't go above 20 years on your

9    sentence?

10               **THE DEFENDANT:**  Yes, ma'am.

11               **THE COURT:**  Now, parole has been abolished.  You will

12   not be released early on parole.

13       The law, as I mentioned, does require a period of at least

14   five years on supervised release after your active prison term.

15   At your sentencing hearing the Court will decide how long your

16   supervised release is, and the Court will also decide what

17   conditions you'll have to comply with while you're on

18   supervised release.  Ordinarily, it's things like warrantless

19   searches to be sure you don't have any child pornography,

20   combined with sex registration -- sex offender registration

21   laws, things like that.

22       If you violate those conditions, the Court can revoke your

23   supervised release and send you back to prison.  That

24   additional time can be quite substantial.  The Court may also

25   require additional time on supervised release after that second

1  prison term.

2      Do you understand?

3          **THE DEFENDANT:**  Yes, ma'am.

4          **THE COURT:**  Do you have any questions about what I

5  just said?

6          **THE DEFENDANT:**  No, ma'am.

7          **THE COURT:**  There are other consequences to a guilty

8  plea.  You will have a felony conviction, and it will be

9  illegal for you to possess a firearm or ammunition.  You will

10 give up certain civil rights, such as the right to vote, the

11 right to hold public office, and the right to serve on a jury

12 for a period of time; and if you were not a citizen, you almost

13 certainly would be deported.

14     Do you understand those rights?

15         **THE DEFENDANT:**  Yes, ma'am.

16         **THE COURT:**  Where were you born?

17         **THE DEFENDANT:**  Where was I born?

18         **THE COURT:**  Yes.

19         **THE DEFENDANT:**  Forsyth County.

20         **THE COURT:**  Do you have any questions at all about the

21 penalties for this crime or the consequences of a guilty plea?

22         **THE DEFENDANT:**  No, ma'am.

23         **THE COURT:**  If you plead guilty and the Court accepts

24 your guilty plea, your sentencing hearing will be in several

25 weeks.

1    In the meantime, the probation office will prepare a

2  presentence report.  It will have a lot of information in it

3  about you and your background and circumstances, and about the

4  crime that you pled guilty to.  It will also contain a proposed

5  sentencing guideline range taking into account the specifics of

6  your case and your situation.

7    I -- you and your attorney, as well as the Government, will

8  have a chance to review that presentence report.  You can

9  object if there are mistakes in it or if you disagree with the

10 guideline range.  At your sentencing hearing the Court will

11 resolve any disputes and will make the final decision about

12 your sentencing guideline range.

13    Once the Court determines your guideline range, the Court

14 always considers it.  It is important, but it is not binding.

15 It's advisory only.  Sometimes there's a reason for a shorter

16 sentence, though I can't go below 5 years; and sometimes

17 there's a reason for a longer sentence, though, of course, I

18 can't go above 20 years.  Those are the statutory bookends for

19 this sentence.

20    The Court will decide your individual sentence at your

21 sentencing hearing and only after reviewing the presentence

22 report, considering the guidelines, listening to any other

23 evidence, giving your attorney and the prosecutor a chance to

24 speak, and giving you a chance to speak.

25    Do you understand how the sentencing process works?

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  Any questions about it?

3          **THE DEFENDANT:**  No, ma'am.

4          **THE COURT:**  As you can see, no one today knows what
5   your guideline range is, and no one knows what your sentence is
6   going to be.  Your attorney may have given you some numbers as
7   estimates of your guideline range, or talked to you about
8   sometimes what happens in other cases where people have pled
9   guilty to this kind of crime or a similar crime; but he can't
10  tell you what's going to happen in your case because I don't
11  know what's going to happen in your case.  So he can't make any
12  predictions or guarantees about that.

13      Do you understand?

14          **THE DEFENDANT:**  Yes, ma'am.

15          **THE COURT:**  If your guideline range or your sentence
16  should turn out to be different than any estimates your
17  attorney has given you, that is not a basis to withdraw your
18  guilty plea.

19      Do you understand?

20          **THE DEFENDANT:**  Yes, ma'am.

21          **THE COURT:**  Has anyone made any promises or guarantees
22  to you about your guideline range or your specific sentence,
23  other than telling you about the 5-year minimum and the 20-year
24  maximum?

25          **THE DEFENDANT:**  No, ma'am.

1      **THE COURT:**  Now, ordinarily, you and the Government

2   would have certain rights to appeal your sentence.  You would

3   have certain rights to challenge your conviction and sentence

4   after it becomes final.  By your plea agreement, you are

5   substantially reducing and limiting those rights, and you can

6   only appeal or challenge your conviction after it becomes final

7   based on a sentence in excess of the statutory maximum, a

8   sentence based on an unconstitutional factor, or should the

9   Government appeal the sentence.

10      **THE DEFENDANT:**  Yes, ma'am.

11      **THE COURT:**  And you can raise those same issues on

12   postconviction, as well as ineffective assistance of counsel or

13   prosecutorial misconduct not known to you today.

14      Do you have any questions about the limits you've agreed to

15   on your appeal rights and your collateral relief right?

16      **THE DEFENDANT:**  No, ma'am.

17      **THE COURT:**  You've also agreed as part of your plea

18   agreement that should your conviction or sentence be set aside

19   for any reason, the statements you make to me here today,

20   including your guilty plea, will be admissible in evidence

21   against you.  Ordinarily, they are not.

22      Do you understand that waiver and agreement?

23      **THE DEFENDANT:**  Yes, ma'am.

24      **THE COURT:**  Now, if you plead guilty, you're admitting

25   the elements of this crime; you're giving up your

1  constitutional rights to a trial; and you are accepting the
2  terms of the written plea agreement.
3      Do you understand?
4          **THE DEFENDANT:**  Yes, ma'am.
5          **THE COURT:**  Do you have any questions about anything
6  we've talked about here today or otherwise about this case?
7          **THE DEFENDANT:**  No, ma'am.
8          **THE COURT:**  Now, the next question I will ask you is
9  how you plead to Count Two, transporting child pornography; and
10 that's where you'll tell me you plead guilty or you've changed
11 your mind.  Before I ask you that question, do you need to talk
12 to Mr. Wellman privately?  I'll be glad to give you a chance if
13 you do.
14         **THE DEFENDANT:**  No, ma'am, I'm good.
15         **THE COURT:**  I'm sorry?
16         **THE DEFENDANT:**  No, ma'am.
17         **THE COURT:**  Okay.  How do you plead to Count Two in
18 the indictment, transporting child pornography?
19         **THE DEFENDANT:**  Guilty.
20         **THE COURT:**  And are you pleading guilty because you
21 are, in fact, guilty?
22         **THE DEFENDANT:**  Yes, ma'am.
23         **THE COURT:**  The Court finds that the Defendant is
24 competent and capable of making informed decisions; and that in
25 entering an informed plea to this charge, he has consented to

1    plead guilty in a video conference hearing; and he is aware of
2    the nature of the charges and the consequences of a guilty
3    plea; his plea of guilty is knowing and voluntary.

4        I think I forgot to say earlier that the courtroom is open,
5    and the courthouse is open.  We have had occasional spectators
6    during some of these video conferences, so -- and we do have
7    monitors set up so that anyone in the courtroom can see the
8    same thing that we are all seeing on the video screen.  There
9    is nobody here, as it happens; but the courtroom is open and
10   public.

11       Now let's turn to the factual basis.

12       Mr. Wellman, I believe you told me that you had given
13   Mr. Wood a copy; is that right?

14       **MR. WELLMAN:**  Your Honor, I'll -- what I'll say is
15   that I certainly made one available.  I can't recall what
16   Mr. Wood -- some clients with charges like this do not want to
17   have that in their possession in custody.  So I can't recall
18   whether Mr. Wood kept one.  I definitely made it available to
19   him and reviewed it with him.

20       **THE COURT:**  All right.  Mr. Wood, do you remember
21   going over the written factual basis which the Government filed
22   in this case, the summary of the evidence against you?

23       **THE DEFENDANT:**  Yes, ma'am.

24       **THE COURT:**  Mr. Wellman, any objections to the factual
25   basis?

1    **MR. WELLMAN:**  Your Honor, we would point to -- it

2    would be the last paragraph on page 8, and I guess it's the

3    second to last sentence there regarding the Snapchat

4    communications:  "The folder included screen captures of

5    multiple Snapchat communications from Minor-1, as well as

6    deleted images of Minor-1's breasts and genitalia."  We would

7    object at this time solely to whether the images were of

8    Minor-1.

9        **THE COURT:**  Okay.  Thank you.  That would not appear

10   to undermine the factual basis for his guilty plea.

11       Do you agree with that?

12       **MR. WELLMAN:**  Yes, Your Honor.

13       **THE COURT:**  And do you stipulate that there is an

14   independent basis in fact for his guilty plea?

15       **MR. WELLMAN:**  We do.

16       **THE COURT:**  Ms. DuPre, is there anything you want to

17   add to the factual basis?

18       **MS. DUPRE:**  No, Your Honor.

19       **THE COURT:**  The Court finds that the Defendant -- I

20   read the factual basis before court, obviously; and it sure

21   appeared to me to be sufficient -- well sufficient to support

22   his guilty plea.

23       I will so find that his plea of guilty is supported by an

24   independent basis in fact containing each of the essential

25   elements of the offense.  His plea of guilty is accepted, and

1   the Defendant is adjudged guilty of Count Two, transporting

2   child pornography.

3       The Court directs the probation office -- pardon me.  The

4   Court directs the probation department to prepare a presentence

5   report.

6       Mr. Wood, they'll want to talk with you about that.  Your

7   attorney can participate in that interview.  They'll

8   investigate other things as well.

9       Is he -- does he want the -- is this subject to the

10  psychosexual evaluation, transporting, or is he not wanting

11  that?

12          **MR. WELLMAN:**  Your Honor, I did discuss it with him.

13  He would consent to anything Your Honor would order as to that.

14          **THE COURT:**  Okay.  All right.  Well, I'll direct then

15  that the psychosexual evaluation can go forward, and I'll set

16  it out a little bit further to give more time for that.

17      Tuesday, September 29th, at 9:30, if that's all right with

18  everyone?

19      Okay.  If it needs to be continued or rescheduled for any

20  reason, you-all just let me know; and if there are any concerns

21  about -- I don't actually know how they're doing those these

22  days.

23      If there ends up being any concerns or problems,

24  Mr. Wellman, you can just file an appropriate motion --

25          **MR. WELLMAN:**  Thank you.

1    **THE COURT:**  -- and I'll be glad to modify or amend as
2    necessary.

3        I hope we'll be able to do his sentencing hearing in
4    person; that this pandemic will be a distant memory in
5    September.  That seems a little unlikely.  And if it should --
6    if there should still be either public health reasons which
7    prevent an in-person hearing or if Mr. Wood has particular
8    reasons to be concerned about transport, in combination with
9    whatever the pandemic is doing in September, you know, he --
10   assuming that we're still under the national emergency, then he
11   could consent to a remote hearing for sentencing.

12       But, you know, I like to do sentencings in person.  I've
13   always done sentencings in person, and that would be my hope
14   and expectation.  But if conditions still make that either
15   impossible or very difficult, then Mr. Wood can consent to a
16   video sentencing hearing if he wants.

17       Mr. Wood, you'll get to make an entirely separate decision
18   about that.  You don't have to have a remote sentencing hearing
19   just because you agreed to plead guilty by video.

20       Do you have any questions about that?

21           **THE DEFENDANT:**  No, ma'am.

22           **THE COURT:**  I hope we'll be able to do it in public.

23       Ms. DuPre, have I forgotten anything from your perspective?

24           **MS. DUPRE:**  No, Your Honor.

25           **THE COURT:**  Mr. Wellman, did I forget anything?  Is

1 there anything else you want to ask me to do?

2          **MR. WELLMAN:**  No, Your Honor.

3          **THE COURT:**  Mr. Wood, any last-minute questions?

4          **THE DEFENDANT:**  No, ma'am.

5          **THE COURT:**  Okay.  I will see you-all then hopefully

6 in September for the sentencing hearing or otherwise as it is

7 scheduled, and court is adjourned.

8      (Proceedings concluded at 10:33 a.m.)

9

10

11

12                    **C E R T I F I C A T E**

13      I, LORI RUSSELL, RMR, CRR, United States District Court
Reporter for the Middle District of North Carolina, DO HEREBY
14 CERTIFY:

15      That the foregoing is a true and correct transcript of the
proceedings had in the within-entitled action; that I reported
16 the same in stenotype to the best of my ability and thereafter
reduced same to typewriting through the use of Computer-Aided
17 Transcription.

18

19 *Lori Russell*

20 Lori Russell, RMR, CRR          Date:  10/21/21
Official Court Reporter

21

22

23

24

25